**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly R. Kapp,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-18-04565-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Kelly R. Kapp's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl. Br.") and Defendant SSA Commissioner's Response Brief (Doc. 14, "Def. Br."). Plaintiff did not file a Reply Brief. The Court has reviewed the briefs and Administrative Record (Doc. 9, "R.") and now affirms the Administrative Law Judge's decision (R. at 17–37) as upheld by the Appeals Council (R. at 1–3).

**I.      BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on January 15, 2015, for a period of disability beginning on September 1, 2014 (amended). (R. at 17.) Her claim was denied initially on April 9, 2015, and upon reconsideration on August 24, 2015. (R. at 17.) Plaintiff appeared before the ALJ for a hearing regarding her claim on May 5, 2017,

which the ALJ denied on October 23, 2017. (R. at 37, 51.) On October 11, 2018, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status/post anterior cruciate ligament ("ACL") reconstruction, chondromalacia, fibromyalgia, Ehlers-Danlos Syndrome ("EDS"), autonomic nervous system disorder, chronic pain syndrome, status/post left shoulder arthroscopy and labrum repair. (R. at 19.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 36.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 28.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: stand and walk for a total of three hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolding; occasionally balance, kneel, crouch, and crawl; frequently stop; avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, gases, and poor ventilation; no exposure to hazards, such as moving machinery or unprotected heights; frequently, not constantly, handle and finger.

(R. at 28.) Accordingly, the ALJ found that Plaintiff could perform past relevant work as an administrative assistant. (R. at 34.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   ANAYSIS

First, Plaintiff argues the ALJ erred in assigning little weight to the opinions of Dr. David S. Saperstein and Dr. Jordan S. Ross and in assigning minimal weight to her physical

therapists ("PT"), massage therapist ("MT"), and the vocational expert ("VE"). (Pl. Br. at 6–18.) Second, Plaintiff argues the ALJ erred in rejecting Plaintiff symptom testimony because the ALJ provided insufficient reasons for rejecting the testimony. (Pl. Br. at 23–26.)

The Court finds the ALJ did not err in assigning weight to medical opinions and in rejecting Plaintiff's symptom testimony. First, the ALJ explained that Drs. Saperstein and Ross's medical opinions were contradictory which is why she afforded them little weight. (R. at 6–19.) Second, the ALJ provided germane reasons supported by substantial evidence in assigning minimal weight to PT Richard S. Randall, PT Larry A. Gruver, MT Alisha Felten, and VE David A. Janus. PT Randall and PT Gruver found Plaintiff could not sit for longer than 20 minutes, but in the same year, Plainitff traveled by airplane to California, which the ALJ found was inconsistent. MT Felten provided an opinion unsupported by documented notes and outside the scope of her expertise as a massage therapist. VE Janus based his opinion on whether Plaintiff was disabled under the Arizona Revised Statutes and Arizona State Retirement System, which have different standards than the Social Security Act. Finally, the ALJ opined that Plaintiffs ADLs and the medical evidence do not support Plaintiff's symptom testimony. For the following reasons, the Court affirms.

**A.  The ALJ did not err in evaluating the medical opinions.**

Plaintiff argues the ALJ erred by rejecting the medical opinions of two treating physicians, Drs. Saperstein and Ross. (Pl. Br. at 5.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a

claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. The ALJ did not err in assigning little weight to Dr. Saperstein's medical opinions.

Plaintiff argues the ALJ erred in giving little weight to Dr. Saperstein's medical opinions. (Pl. Br. at 6–18.) The ALJ afforded "less than full weight" to the letters and medical source statements from Dr. Saperstein because they appeared to be narratives written to support Plaintiff's application for long-term disability insurance through the state. (R. at 31–32, 639–44, 1393–97, 1793–99, 2113.)

Plaintiff argues that the ALJ did not explain why she rejected Dr. Saperstein's opinions, but the ALJ made clear in her opinion that Dr. Saperstein's objective and clinical observations did not support the extreme limitations he described. (R. at 32; Pl. Br. at 8.) Specifically, the ALJ identified that Dr. Saperstein's initial physical examination in May 2014 was largely normal. (R. at 32, 693–96.) Dr. Saperstein noted in this examination that Plaintiff was in no acute distress, had no sensory deficits, and had normal muscle tone, bulk, strength, and gait (R. at 32, 695). At the next examination in May 2015, Dr. Saperstein's nurse practitioner found Plaintiff was in no acute distress, had no abnormalities, had normal muscle tone and bulk, had full strength throughout, and had normal gait and hypermobility. (R. at 32, 1486–87.) In June 2015, Dr. Saperstein also examined Plaintiff's knee because of Plaintiff's concerns about complex regional pain

- 5 -

syndrome, but he found no warmth or temperature difference. (R. at 32, 1482–84.) In August 2015, Dr. Saperstein examined Plaintiff's left shoulder and found it was normal. (R. at 32, 1820–22.) In August 2016, Dr. Saperstein observed significant tenderness to palpation. (R. at 32, 1877–80.) In November 2016, Dr. Saperstein observed Plaintiff had full strength and had normal coordination and gait. (R. at 32, 1870–72.) Because of these examination results, the ALJ found that Dr. Saperstein's opinions were inconsistent with his records of Plaintiff's limitations and symptoms. The inconsistencies the ALJ found between Dr. Saperstein's medical examinations and his reports of Plaintiff's symptoms and limitations are a specific and legitimate reason for giving little weight to Dr. Saperstein's opinion and are supported by substantial evidence.

Plaintiff contends that because her diseases are diagnosed based on self-reports, the ALJ erred in finding Dr. Saperstein's opinions should be given little weight because they were largely based on Plaintiff's self-reports. (Pl. Br. at 8–9.) Plaintiff's opening brief spends much time explaining that Plaintiff was actually diagnosed with EDS, complex regional pain syndrome, and fibromyalgia but misses the issue here. The ALJ does not refute that Plaintiff has these diseases, only that the diseases do not inhibit her from working. Further, the ALJ makes clear that her reasoning behind rejecting Dr. Saperstein's opinions were inconsistencies between his medical examinations and his opinions of Plaintiff's degree of limitations. These inconsistencies are not a result of the nature of Plaintiff's diseases or their heavy reliance on self-reports for diagnoses and treatment. Had Dr. Saperstein indicated in his medical examination reports more severe limitations based on Plaintiff's self-reports and his examination findings, perhaps these discrepancies would not exist.

Plaintiff also argues the ALJ gave little weight to Dr. Saperstein's opinions because he incorrectly assessed Plaintiff's mental limitations regarding her frequent interruption of ability to maintain attention, concentration, persistence, and pace. (Pl. Br. at 17; R. at 26–27, 643, 1396.) But the ALJ made clear that Dr. Saperstein's opinions regarding Plaintiff's alleged mental limitations did not tie into any of his assessments to anxiety or depression

and that his treatment notes were "unpersuasive regarding the functional effect of potential anxiety or depression." (R. at 28, 639–44, 1393–97, 1793–99, 2113.) This was a specific and legitimate reason to give little weight to Dr. Saperstein's opinions.

Finally, Plaintiff argues the ALJ erred in rejecting Dr. Saperstein's opinion because Plaintiff changed her disability onset date from October 2013 to September 2014. (Pl. Br. at 17, R. at 32.) Plaintiff changed the disability onset date due to her receipt of unemployment benefits during that time period, and Dr. Saperstein, apparently, amended his opinion of the disability onset date to reflect Plaintiff's change. (Pl. Br. at 17.) While the ALJ does mention Dr. Saperstein's lack of explanation for changing the disability onset date, it is clear from the ALJ's analysis that she relied on the inconsistencies in Dr. Saperstein's medical opinions to make her decision to give little weight to Dr. Saperstein's medical opinions.

### 2. The ALJ did not err in giving little weight to Dr. Ross's medical opinions.

Plaintiff argues the ALJ made many of the same mistakes with Dr. Ross's opinions as she did with Dr. Saperstein's opinions by determining that Dr. Ross's opinions were based largely on Plaintiff's self-reports. (Pl. Br. at 18–19.) Dr. Ross wrote a letter concluding that Plaintiff had severe limitations in her functional capacity, she could not work an occupation, she had difficulty maintain body position, and that she was unable to do repetitive tasks. (R. at 33, 2111–12, 2114–15.) However, the ALJ found that Dr. Ross's records did not reveal any weakness. (R. at 33, 1586.) The ALJ also found that Dr. Ross's letter detailing Plaintiff's alleged severe limitations contradicted Dr. Ross's previous medical findings. Additionally, the ALJ found that Dr. Ross encouraged Plaintiff to exercise and do aquatic therapy, which the ALJ found is contrary to the severe limitations Dr. Ross described in his letter. (R. at 33.) The ALJ provided substantial evidence in giving little weight to Dr. Ross's opinions because the medical opinions were contradictory.

Plaintiff also contends that the ALJ erroneously rejected Dr. Ross's opinions regarding Plaintiff's mental limitations because they were not directly tied to anxiety or depression. (R. at 28, Pl. Br. at 19.) Similar to the ALJ's reasoning for giving little weight

to Dr. Saperstein's opinions, the ALJ made clear that Dr. Ross's opinions regarding Plaintiff's alleged mental limitations did not tie into any of his assessments to anxiety or depression and that his treatment notes were "unpersuasive regarding the functional effect of potential anxiety or depression." (R. at 28.) The Court finds the inconsistencies between Dr. Ross's reports of Plaintiff's symptoms and her alleged limitations were a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Ross's opinion.

### 3. The ALJ did not err in evaluating the opinions of PT Randall, PT Gruver, MT Felten, and VE Janus.

The ALJ assigned minimal weight to the opinions of PT Randall, PT Gruver, MT Felten, and VE Janus because they all found Plaintiff could not sustain full time work for similar reasons to Drs. Saperstein and Ross. (R. at 33–34, 314–15, 335–37, 523–26, 2124, 2134–42, 2184–94, 2195–96.) An ALJ must give germane reasons that have evidentiary support to reject lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The ALJ assigned minimal weight to PT Randall and PT Gruver because they opined that Plaintiff was only able to sit for 20 minute intervals in the February 2015 evaluation, but in May and September of 2015, Plaintiff took trips to California where she would have to sit longer than 20 minutes at a time. (R. at 33, 2184–94.) Thus the ALJ assigned minimal weight to their opinions that Plaintiff was unable to work for those reason. (R. at 33, 523–26, 2195–96.) Additionally, the ALJ found PT Gruver's opinions too severe and unpersuasive. (R. at 33.) PT Gruver found Plaintiff could not stand, walk, or sit for longer than five minutes. (R. at 33, 2196.) The ALJ provided germane reasons supported by substantial evidence for rejecting the opinions of PT Randall and PT Gruver.

The ALJ also found MT Felten's March 2017 letter should be given little weight. (R. at 34.) In the letter, MT Felton opined that Plaintiff could not stand for long periods without pain, fatigue, and occasional dizziness. (R. at 34, 2124.) MT Felten also noted extreme limitations in Plaintiff's left shoulder abduction and flexion and spasms with other muscles. (R. at 34, 2124.) The ALJ found this letter offered conclusory opinions that were

beyond the scope of MT Felton's scope of practice and that they were not at all supported by treatment notes. (R. at 34.) The Court finds this was a germane reason supported by substantial evidence for giving little weight to MT Felten's opinions.

Finally, the ALJ gave minimal weight to VE Janus's opinions. (R. at 34.) In October 2014 and June 2015, VE Janus reviewed Dr. Saperstein's report and found it described physical functioning that would meet the definition of disability defined under the Arizona Revised Statutes and Arizona State Retirement System. (R. at 34, 76F, 20E, 335-37, 2134-42.) The ALJ found the criteria set forth in these statutes is not necessarily consistent with the criteria set forth to establish disability under the Social Security Act. (R. at 34.) *See* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules."). The ALJ provided germane reasons supported by substantial evidence for giving minimal weight to VE Janus's opinion.

### B.     The ALJ did not err in rejecting Plaintiff's symptom testimony.

Plaintiff contends the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 23–26.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's

analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Plaintiff] and her husband's, father's, and friends' statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 29.) The ALJ provided "specific, clear and convincing" reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony based on Plaintiff's activities of daily living ("ADLs") and the objective medical evidence. *See Molina*, 674 F.3d at 1112.

First, the ALJ did not err in rejecting Plaintiff's symptom testimony based on Plaintiff's ADLs. Plaintiff argues the ALJ omitted substantial evidence of daily limitations,

but the ALJ's opinion considers Plaintiff's daily limitations. (R. at 28–29; Pl. Br. at 25.) The ALJ goes into detail describing Plaintiff's allegations of her symptoms. (R. at 19–21.) The ALJ explains that Plaintiff reported she has difficulties, walking, sitting, lifting, and carrying. (R. at 20.) The ALJ notes Plaintiff described issues with chronic pain, muscles spams, and constant joint pain in her beck, ribs, mid back, low back, hips, knees, left ankle, and wrists. (R. at 20.) The ALJ notes Plaintiff's history with colonic or bowel spasms causing constipation, reflux, and heartburn, as well as her lightheadedness due to her body's inability to regulate her heart rate or blood pressure. (R. at 20.) The ALJ also included that Plaintiff estimated she would be able to sit for 15 to 20 minutes as one time for a total or two hours in an eight-hour workday, stand 10 minutes at one time for a total of one hour, walk for 10 minutes at one time for a total of one hour, and lift five to eight pounds at one time. (R. at 20, 30.) Regardless, Plaintiff was still able to pursue activities that were not consistent with the limitations she alleged. For example, Plaintiff said she could drive a car and completed one to two activities per day. (R. at 20, 27, 1502.) Defendant also points out that after Plaintiff stopped working, she got married, adopted a puppy, and joined a support group. (R. at 27, 30, 1753, 1760, 1763.) Plaintiff was also able to sit on an airplane long enough to fly to California twice in 2015 for vacation, which the ALJ noted called into question Plaintiff's claim that she could not sit for more than a few minutes at a time. (R. at 31, 1753.) Plaintiff also attended physical therapy and took part in aquatic therapy indicating her ability to move and exercise. (R. at 30, 2240, 2242.) Plaintiff also noted that Dr. Saperstein said Plaintiff could not live independently, but as explained previously, the ALJ appropriately gave little weight to Dr. Saperstein's opinion. (R. at 1796; Pl. Br. at 25.) The ALJ appropriately focused on the discrepancies between Plaintiff's allegations and her ADLs.

Second, the ALJ thoroughly explained how Plaintiff's medical evidence did not support her symptom allegations. The ALJ explained that Plaintiff's examinations from her providers did not reveal significant deficits in line with Plaintiff's reports of her functional limitations. (R. at 30.) The ALJ explained that Plaintiff's medical examinations

largely revealed normal findings and occasionally reflected tenderness to palpation and joint hyperextensibility. (R. at 30.) The ALJ acknowledged that diagnostic testing revealed mild degeneration, which in combination with Plaintiff's EDS, resulted in some limitations caused by tenderness at various parts of her body, but explained that despite this, Plaintiff had a lack of neurological or significant musculoskeletal deficits over many examinations. (R. at 30, 693–96, 750, 1487, 1945, 1959, 2133.) Plaintiff also had similarly normal examinations from her knee specialist Dr. Chhabra, pain specialist Dr. Zakas, neurologist Dr. Kapoor, spinal specialist Dr. Crandall, and orthopedic surgeon Dr. Burgess. (R. at 30, 722–23, 749–51, 754–55, 1933–34.) In addition to the normal findings from Plaintiff's doctors, the ALJ found that Plaintiff's symptoms were managed with conservative treatment including physical therapy and exercise. (R. at 31, 722–841, 1505, 1507, 1577–79.)

Plaintiff specifically argues that the ALJ erred in finding Plaintiff did not need an assistive device. (Pl. Br. at 24.) Plaintiff explains she was prescribed or recommended by treating sources that she needed an assistive device including knee braces, a back brace, wrist braces, an SI belt, and a power scooter. (R. at 495, 746, 1371, 1578, 1777, 1814, 1934, 1939; Pl. Br. at 24.) The ALJ found, however, that Plaintiff's primary care physician submitted a request for a scooter at Plaintiff's request, and the scooter was denied by insurance twice. (R. at 30, 85.) The ALJ also points out the record indicates none of Plaintiff's doctors prescribed her use of a wheelchair or that they thought it was needed. (R. at 30.) Though Plaintiff was recommended by treating sources that she wears braces for her knees or wrists are various times, Plaintiff was never prescribed a power scooter, thus the ALJ did not err in finding Plaintiff did not need one.

Additionally, Plaintiff argues the ALJ erred in finding that Plaintiff's symptoms were managed with conservative treatment because this is not a valid reason for diseases with no cure. (R. at 31; Pl. Br. at 26.) Defendant correctly points out that even if Plaintiff's diagnosed conditions do not have a cure, "it does not follow that the nature of treatment is irrelevant." (Def. Br. at 10.) Defendant explains that "[u]nder Plaintiff's theory, course of

treatment for any congenital, genetic, or autoimmune disorder would be irrelevant to the consistency analysis, and that argument has no support in the regulations. The question is not whether Plaintiff has specific diagnoses, but the extent to which her impairments result in functional limitations." (Def. Br. at 10.) The Court agrees. Plaintiff is incorrect in arguing that because her diseases are not curable, that the ALJ's finding well-managed conservative treatment is not a valid reason for discounting her symptom testimony. Even more, the ALJ noted that Plaintiff often adjusted, never took, or stopped taking her prescribed medications on her own. (R. at 21, 25–26, 1482, 1761, 1811, 1874–80, 2127–29.) The ALJ provided specific, clear, and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony including contradictions with Plaintiff's ADLs and symptoms, contradictions with medical evidence, and Plaintiff's noncompliance with treatment, as well as her well-managed conservative treatment.

### IV. CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided sufficient reasons supported by substantial evidence in considering the medical opinions and in rejecting Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** affirming the October 23, 2017 decision of the Administrative Law Judge (R. at 17–37), as upheld by the Appeals Council on October 11, 2018 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of January, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge